UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CRIMINAL NO. 4:20-cr-305 |
| | § | |
| JOSE LUIS DE JONGH ATENCIO, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT JOSE DE JONGH-ATENCIO'S RESPONSE TO
UNITED STATES' TRIAL BRIEF AND OBJECTIONS[1]**

**I.      Mens Rea**

**A.      The United States seeks to constructively amend the Superseding Indictment.**

In December 2020, the United States recognized the weakness of its FCPA "instrumentality" argument. Thus, it went to the Grand Jury for a Superseding Indictment that would allow it to obtain a conviction based on a violation of either the FCPA or the Texas Commercial Bribery statute. But now—recognizing that the Superseding Indictment failed to cure the defects in its case—the United States asks this Court to constructively amend the Superseding Indictment and allow conviction on a basis that was not charged by the Grand Jury.

The Superseding Indictment alleges that De Jongh conspired to and did launder money with knowledge of two—***and only two***—underlying crimes that rendered the proceeds illegal. In Count 1, the Grand Jury specifically charged that De Jongh conspired to conduct a financial transaction,

> ***knowing that the transaction was designed … to conceal and disguise … the proceeds of*** one or more specified unlawful activities, ***namely***, (i) ***bribery of a foreign official, a felony violation of the FCPA***, Title 15, United States Code, Sections 78dd-2 and 78dd-3, and (ii) ***commercial bribery***, a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and Texas Penal Code § 32.43…
>
> [and]

---

[1] This response adds all emphasis and omits all internal citations, quotation marks, and alterations in quoted material.

> ***with the intent to promote the carrying on of*** one or more specified unlawful activities, ***namely***, (i) ***bribery of a foreign official, a felony violation of the FCPA***, Title 15, United States Code, Sections 78dd-2 and 78dd-3, and (ii) ***commercial bribery***, a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and Texas Penal Code § 32.43…

Dkt. 35 ¶ 55. In Counts 2–5, the Grand Jury specifically charged that De Jongh conducted a financial transaction,

> ***knowing that*** … ***the financial transactions were designed…to conceal and disguise … the proceeds of*** one or more specified unlawful activities, ***namely***, (i) ***a felony violation of the FCPA***, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (ii) ***commercial bribery***, a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and Texas Penal Code § 32.43…

*Id.* ¶ 66. And in Count 6, the Grand Jury specifically charged that De Jongh

> ***knowingly engage[d] in … a monetary transaction in criminally derived property***, … ***such funds having been derived from*** one or more specified unlawful activities, ***namely***: (i) ***bribery of a foreign official, a felony violation of the FCPA***, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (ii) ***commercial bribery***, a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3), and Texas Penal Code § 32.43…

*Id.* ¶ 68.

Relying upon the Superseding Indictment, De Jongh has prepared to defend against the United States' allegations that he laundered money with knowledge of and intent to promote conduct that is an FCPA or Texas Commercial Bribery statute violation, ***not*** with knowledge of or intent to promote some other crime(s) not mentioned in the Superseding Indictment. Yet in its trial brief filed a week before trial, the United States has run from the indictment it wrote, contending that "the government is not required to prove that De Jongh *knew* that the transactions involved the proceeds of the ***charged*** specified unlawful activity." Dkt. 80 at 17 (first emphasis in original; second emphasis added). Rather, the United States says it need prove only that De Jongh knew he was laundering proceeds of "some" crime, which could be picked from a smorgasbord of "any number of federal or state crimes." *Id.* For example, De Jongh "could have" known of and intended to promote "an honest services fraud violation, or a wire fraud violation, or embezzlement." *Id.*

1057212.8

Which? The United States doesn't tell us. And the Grand Jury certainly did not charge that De Jongh acted with knowledge of or intent to promote any of those crimes.

"[A]n indictment is not putty in the government's hands." *United States v. Doucet,* 994 F.2d 169, 173 (5th Cir. 1993) (Jones, J.). The United States' position—if accepted—would constructively amend the Superseding Indictment. Under the Fifth Amendment, only the Grand Jury can change the charges in an indictment. *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). An impermissible constructive amendment occurs when a court "permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *United States v. Hoover*, 467 F.3d 496, 500–01 (5th Cir. 2006). The Fifth Circuit consistently reverses convictions where constructive amendments were allowed. *See, e.g.*, *United States v. Lockhart*, 844 F.3d 501 (5th Cir. 2016); *Hoover*, 467 F.3d 496; *United States v. Chambers*, 408 F.3d 237 (5th Cir. 2005); *United States v. Nuñez*, 180 F.3d 227 (5th Cir. 1999); *Doucet*, 994 F.2d 169; *United States v. Adams*, 778 F.2d 1117 (5th Cir. 1985); *United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981); *United States v. Salinas*, 601 F.2d 1279 (5th Cir. 1979); *United States v. Davis*, 461 F.2d 83, 91 (5th Cir. 1972).

Recognizing that the prosecution chooses how specifically it will craft an indictment that it asks the Grand Jury to charge, the law binds the prosecution to its allegations about how the defendant violated a statute. "When the indictment alleges a particular set of facts as forming the basis for the defendant's violation of a statute," a court may not allow "other facts not alleged in the indictment to form the basis of the … guilty verdict." *Lockhart*, 844 F.3d at 514; *see also Stirone*, 361 U.S. at 218 ("when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce

3

of one kind or another had been burdened"); *Davis*, 461 F.2d at 91 ("Since the Government chose to charge a section 1708 violation in a particular manner, we hold that in any conviction pursuant to that indictment the prosecution is bound by the particular allegations contained therein and it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged."); *Hoover*, 467 F.3d at 502 ("when the government chooses to specifically charge the manner in which the defendant's statement is false, the government should be required to prove that it is untruthful for that reason").[2]

The United States acknowledges that an essential element of conspiracy and substantive money laundering offenses is knowledge that a transaction involves proceeds of unlawful activity. Dkt. 80 at 14, 16; Dkt. 80-1 at 1, 3. Here, the United States specifically alleged and the Grand Jury specifically charged De Jongh's knowledge of only two underlying crimes that could render the payments he took illegal: FCPA and Texas Commercial Bribery violations. Additionally, as an essential element of the money laundering counts, the Superseding Indictment charged De Jongh with intent to promote the specified unlawful activity of bribery of a foreign official in violation of the FCPA and Texas Commercial Bribery. Dkt. 35 ¶ 55; *see* Dkt. 80 at 1; Dkt. 80-1 at 3. It is impossible to reconcile this essential element with the United States' new contention that De Jongh's receipt of bribes "could have been based on an honest services fraud violation, or a wire fraud violation, or embezzlement," or "any number" of other crimes. Dkt. 80 at 17. Indeed, had De Jongh known he could be convicted on the basis of some unlawful activity beyond that charged in the Superseding Indictment, he would not have accepted the United States' request that he stipulate to *any* facts, lest he unknowingly walk himself into a conviction. *See* Dkt. 61 (factual stipulation). The United States extracted a stipulation from De Jongh on the basis of specific crimes

---

[2] The United States previously recognized that it is bound to prove that De Jongh "***acted with the requisite intent … as charged in the superseding indictment***." Dkt. 44 at 14 (motion in limine arguing evidence of bribe payments from Clover relevant to show De Jongh's intent).

alleged in the Superseding Indictment, not the universe of potential crimes the United States now wants to bring in but failed to present to the Grand Jury.

The unpublished decision *United States v. Rivas-Estrada*, 761 F. App'x 318 (5th Cir. 2019), which the United States discusses at length, is factually and legally distinguishable. The Court held that the defendants need not know the precise unlawful activity of others that had generated the proceeds, as long as they knew the proceeds came from "some illegal activity." *Id.* at 326. But *Rivas* had materially different facts: the defendants were convicted of conspiracy to launder someone else's illegal proceeds; De Jongh is accused of laundering the proceeds of crimes in which **he** allegedly participated. Further, *Rivas* had a materially different indictment: it charged in general terms that the defendants "knew that the property involved in the financial transactions … represented the proceeds of some form of unlawful activity," not that they knew the specified unlawful activity. Dkt. 535 at 4, No. 4:15-cr-00001 (E.D. Tex. July 13, 2016). Here, the Superseding Indictment specifically charges that De Jongh ***knew he was laundering the proceeds of an FCPA violation and Texas Commercial Bribery***. "Since the Government chose to charge [money laundering offenses] in a particular manner…the prosecution is bound by the particular allegations contained" in the Superseding Indictment and "cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged." *Davis*, 461 F.2d at 91 (finding constructive amendment).

Finally, the United States' contention that it need not prove De Jongh knew his proceeds derived from unlawful activity "specified" in the money laundering statute is a red herring. Dkt. 80 at 16 and n.12. De Jongh is not arguing that the United States must prove he knew the alleged crimes that generated the laundered proceeds were statutorily "specified" crimes. De Jongh is arguing, from long-settled constructive-amendment caselaw, that the United States must prove what it alleged in the Superseding Indictment: that he knew of and intended to promote an FCPA

1057212.8

violation and Texas Commercial Bribery. This Court should refuse to allow the United States to constructively amend the Superseding Indictment.

**B.      The United States is wrong about what De Jongh must have known.**

      **i.      The United States cannot prove an element of the money laundering offenses (predicated on FCPA) if De Jongh did not know he was a foreign official.**

As explained above, to prove the charged money laundering offenses predicated on the FCPA, the United States must prove what it alleged: that De Jongh willfully conspired to and did launder money knowing that the proceeds were derived from an FCPA violation. The United States contends that, even if that is its burden, "knowledge or belief is simply not an element of the FCPA." Dkt. 80 at 23.

That is incorrect. As the United States observes, the FCPA regulates the bribe-payor. *Id.* And as the United States concedes in its proposed instructions to this Court, the bribe-payor only violates the FCPA if he knows the person he is paying is a foreign official. Dkt. 80-1 at 8 (recognizing that element of the FCPA violation is that "Gonzalez or Farias knew that all or a portion of the payment … would be offered … to a foreign official").

The United States is correct that, to prove the *bribe-payor's mens rea* for an FCPA violation, the United States does not also have to prove that the foreign official knew he was a foreign official. Dkt. 80 at 23. The knowledge of the foreign official, who is not an offender under the FCPA, is irrelevant to the bribe-payor's charge. But the issue here is the alleged *foreign official's mens rea* for money laundering offenses. To prove that De Jongh willfully joined with Gonzalez, Farias, and others in a conspiracy to, and did knowingly and intentionally, launder proceeds of an FCPA violation—i.e., corrupt payments to himself, an alleged foreign official— the United States necessarily must prove that De Jongh knew he was a foreign official. Without that knowledge, he could not possibly know the proceeds derived from an FCPA violation.

1057212.8

>      ii.    **The United States cannot prove an element of the money laundering offenses (predicated on Texas Commercial Bribery) or the Travel Act offenses if De Jongh did not know he lacked CITGO's consent.**

As explained in Part I(a), to prove the charged money laundering offenses predicated on Texas Commercial Bribery, the United States must prove what it alleged: that De Jongh willfully conspired to and did launder money knowing that the proceeds were derived from commercial bribery. Further, the United States acknowledges that to prove its Travel Act charges, it must prove that De Jongh specifically intended to promote Texas Commercial Bribery. Dkt. 80 at 18. The Texas statute requires that a fiduciary act without his beneficiary's consent. Tex. Penal Code § 32.43(b). The United States argues, however, that according to the grammatical structure of the Texas statute, De Jongh's knowledge that consent is lacking is irrelevant; only the beneficiary's (CITGO's) knowledge of consent matters. *Id.* at 18–19, 25.

The United States cites no case to support its grammatical argument, and Texas courts have implicitly rejected it. As the United States itself notes, a Texas court of appeals—affirmed by Texas's highest criminal court—has held that the bribe-payor, who commits an offense under subsection (c) of the Texas statute, must know the fiduciary is acting without consent. Dkt. 80 at 27 n.15 (citing *Weightman v. State*, 1996 WL 718465, at *8 (Tex. App.—Houston [14th Dist.] 1996), *aff'd*, 975 S.W.2d 621 (Tex. Crim. App. 1998)). The court could not have reached that holding if it believed the statutory text required only the beneficiary to know it hadn't consented.

Further, *Weightman* explicitly drew the elements of the bribe-payor's offense—including the payor's knowledge that the fiduciary lacks consent—from the elements of the *bribe-taker's* offense (which the United States alleges against De Jongh). The court recognized that subsection (c) of the Texas statute "criminalizes only those offers the acceptance of which would violate Subsection (b)," the provision that applies to the fiduciary who accepts bribes. 1996 WL 718465, at *8. "Therefore," the court held, one of the bribe-payor's elements is that he "knows … the

7

offeree acts without … consent." *Id. Weightman*'s reasoning indicates that the court understood knowledge of lack of consent to be an element of the fiduciary's offense.[3]

## II.  De Jongh's Alleged "Misstatements" of Law and Fact

### A.  FCPA

Eager to downplay its unprecedented position that American-created, American-incorporated, and American-operating CITGO is a foreign government's instrumentality, the United States insists that *United States v. Lambert* was a case like this one because one of the alleged instrumentalities was TENAM, a U.S. corporation. Dkt. 83 at 5. But as the United States acknowledges, *Lambert*—unlike this case—also involved a foreign entity, TENEX, as an alleged instrumentality. *Id.*; *see also* Dkt. 74 at 8 (De Jongh Trial Memorandum correctly stating that every prior instrumentality case, including *Lambert*, has involved a foreign enterprise). Importantly, the alleged "foreign official" in *Lambert* was dually employed by both TENEX and TENAM, so the jury could have found an FCPA violation by finding that either "TENEX *or* TENAM [wa]s an instrumentality of a foreign government." Dkt. 80-6 at 60 (*Lambert* jury instructions). There has ***never*** been a case like this one—*Lambert* included—in which an FCPA violation turns on whether a U.S. corporation is a foreign instrumentality.

As for the United States' reliance on three guilty pleas purportedly predicated on the United States' charge that CITGO is a Venezuelan-government instrumentality, the United States overreaches. The factual basis for Gonzalez and Farias's guilty pleas includes their payments to officials of foreign corporation *PDVSA*, an alleged foreign instrumentality. *See* Dkt. 50 at 12–13, *United States v. Gonzalez-Testino*, No. 4:19-cr-00341 (S.D. Tex. May 29, 2019); Dkt. 13 at 9–10,

---

[3] As *Weightman* reflects, Texas courts have not found the Texas Commercial Bribery statute ambiguous on the issue of whether it requires bribe-payor and bribe-taker knowledge that the beneficiary's consent is lacking. But if the statute were ambiguous, "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008).

1057212.8

*United States v. Farias-Perez*, No. 4:20-cr-00089 (S.D. Tex. Feb. 19, 2020). In fact, Farias' guilty plea states only that PDVSA, not CITGO, is a foreign instrumentality under the FCPA. Dkt. 13 at 9, *Farias-Perez*, No. 4:20-cr-00089. Thus, as in *Lambert*, neither Gonzalez nor Farias' convictions depend on CITGO's status as an alleged foreign instrumentality.

In any event, guilty pleas do not put the United States to its burden of proof at trial. The United States has **never** been required to prove beyond a reasonable doubt that CITGO or any other U.S. corporation was a foreign instrumentality under the FCPA. When put to its proof, the United States cannot meet its burden as to CITGO here.

## B.   Commercial Bribery

Texas's Commercial Bribery statute expressly contemplates that a beneficiary, which includes a corporation, *can consent* to its fiduciary's acceptance of bribes. Tex. Penal Code §§ 1.07(a)(38), 32.43(a)(1), (b). As explained in the Texas House Committee Report—attached to the United States' trial brief—the lack-of-consent requirement "is included to show that what is essential to this offense is a violation of trust by the fiduciary. It may be ok with some beneficiary for the fiduciary to receive an extra fee-for-service from another party; but the beneficiary is entitled to know about it." Dkt. 80-3 at 34.

Texas law is also clear about how inanimate corporations *know* and *consent*: through their vice-principals. Dkt. 74 at 39–40. The United States brushes aside the vice-principal doctrine because it appears in civil cases. Dkt. 83 at 6. But the United States fails to explain why a different, **lesser** standard should apply to how a corporation knows and acts for purposes of **criminal** liability. Instead, the United States appeals to extremes, positing that a senior corporate officer could avoid Texas Commercial Bribery by secretly consenting to his own bad act. *Id.* But that hypothetical is nowhere close to this case, where the evidence will show that De Jongh's conduct was well known within CITGO and instigated, approved, and rewarded by those in charge. *Cf.*

9

1057212.8

Dkt. 80-3 at 34 (Texas legislature required lack of consent to show that fiduciary's "violation of trust" is "essential" to commercial-bribery offense).

According to the United States, De Jongh is simply arguing that "he should not be held to account for his misconduct because other Citgo employees accepted bribes." Dkt. 83 at 7. No, De Jongh is arguing that he did not commit Texas Commercial Bribery, which requires lack of consent, because those employees who knew and acted for CITGO as a matter of Texas law consented to his conduct. The lack-of-consent requirement recognizes that it "may be ok with some beneficiary for the fiduciary to receive an extra fee-for-service…[as long as the beneficiary] know[s] about it." Dkt. 80-3 at 34. The evidence will show precisely that here. Yet the United States argues there could be no consent "in contravention of Citgo's own policies," Dkt. 83 at 7, even though the evidence will show that CITGO flouted those paper policies in practice. The United States' position reads the lack-of-consent requirement out of the statute.

### III.     The United States' Evidentiary Objections

The defense will respond to the United States' objections to the admissibility of the defense's exhibits at the appropriate time during trial. Here the defense responds only to the United States' objections to the defense's exhibits on foreign law.

> #### A.      De Jongh has provided reasonable written notice that he intends to raise an issue of foreign law.

Without citation to a single authority, the United States objects to four of the defense's exhibits (DX 1, 14, 37, 38) on the basis that Federal Rule of Criminal Procedure 26.1 "requires reasonable written notice to both the government and the court for **26.1 evidence**." Dkt. 83 at 1. The United States argues that De Jongh has not provided such notice. The United States is incorrect, both as to what Rule 26.1 requires and as to whether De Jongh has complied.

Rule 26.1, which the United States does not quote, says that "[a] party intending to *raise an issue of foreign law* must provide the court and all parties with reasonable written notice." The

rule's purpose is to prevent "unfair surprise" that a case involves issues of foreign law. FED. R. CIV. P. 44.1, Advisory Committee Notes; *see also* FED. R. CR. P. 26.1, Advisory Committee Notes ("Rule 26.1 is substantially the same as Civil Rule 44.1. A full explanation of the merits and practicability of the rule appear in the Advisory Committee's Note to Civil Rule 44.1."). Contrary to the United States' contention, nothing in Rule 26.1's text requires that a party give notice of each piece of evidence it intends to submit on foreign law.

De Jongh has given reasonable written notice that this case will involve issues of Venezuelan law. Rule 26.1 imposes no time limitation on the notice requirement; it states only that notice must be "reasonable." FED. R. CIV. P. 44.1, Advisory Committee Notes (which Rule 26.1 incorporates by reference). On December 17, 2020, more than four months before trial, the defense outlined its Venezuelan legal expert's anticipated testimony about Venezuelan law in its Rule 16 disclosure to the United States. Then, De Jongh filed his Trial Memorandum and provided his proposed exhibits to the United States and to the Court a week before trial, on the deadline the Court imposed for memoranda and exhibit lists. De Jongh's Memorandum and exhibits clearly and specifically lay out the issues of Venezuelan law in this case.

Neither the United States nor this Court are surprised that this case concerns those issues. Both the Original Indictment and Superseding Indictment were predicated on an alleged Foreign Corrupt Practices Act violation and specifically charged that CITGO is a Venezuelan-government instrumentality and that De Jongh is therefore a Venezuelan-government official.[4] Dkt. 1, 35. The

---

[4] Arguably, the Original Indictment and Superseding Indictment obviate any requirement that De Jongh provide written notice of foreign-law issues. Rule 26.1's commentary directs the reader to the explanatory commentary of Federal Rule of Civil Procedure 44.1, the civil analogue to Rule 26.1. Rule 44.1's commentary explains that "[i]f notice is given by one party it need not be repeated by any other and serves as a basis for presentation of material on the foreign law by all parties." Because the United States gave written notice that this case involves foreign law in its Original and Superseding Indictments alleging that CITGO is an instrumentality of the Venezuelan government, De Jongh need not repeat that notice and may present material on foreign law on the basis of the United States' notice.

1057212.8

seminal case on FCPA instrumentality, *United States v. Esquenazi*, makes clear that instrumentality analysis involves issues of foreign law. *See* 752 F.3d 912, 925–26 (11th Cir. 2014) (instrumentality requires determination that "the entity performs a function the [foreign] government treats as its own" and involves factors like "foreign government's formal designation of the entity"). And far from surprised by this, the United States outlined these *Esquenazi* factors in the trial brief it cross-filed on the same day De Jongh filed his Trial Memorandum. Dkt. 80-1 at 12–13. De Jongh's written notice of foreign legal issues, a surprise to no one and given months ago in De Jongh's Rule 16 disclosure and in his Trial Memorandum on the Court-imposed deadline, was reasonable and thus complies with Rule 26.1.

**B.     The Court has wide discretion to consider any foreign-law evidentiary materials without regard to the Rules of Evidence.**

In addition to claiming lack of notice, the United States objects to the defense's foreign-law evidence based on provenance (DX 37, The Venezuelan Constitution) and authenticity (DX 38, Venezuela's Response to an Organization of American States questionnaire). Dkt. 83 at 2. Rule 26.1 provides, however, that "in deciding [foreign-law] issues a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence." Nevertheless, DX 37 may be found on the Venezuelan Embassy's website.[5] The portions of the Constitution De Jongh cites are also found verbatim in the Venezuelan Constitution translation on the website of the Constitute Project, an organization that exists to translate and make available the world's constitutions, as well as at other sites analyzing Venezuelan law.[6] DX 38 may be found

---

[5]  http://www.venezuelaemb.or.kr/english/e_gover.asp;
http://www.venezuelaemb.or.kr/english/ConstitutionoftheBolivarianingles.pdf.

[6]  https://www.constituteproject.org/constitution/Venezuela_2009.pdf?lang=en;
https://venezuelanalysis.com/constitution/title/6.

1057212.8

on the website of the Organization of American States, an international body that includes the United States.[7]

The United States also objects to DX 1 (Declaration of D.H.) and DX 14 (Declaration of P.P.) on the basis that they contain statements unrelated to issues of foreign law. Dkt. 83 at 1–2. The United States objects that DX 1 is written by an American lawyer, but DX 1 attests to the declarant's research of whether and how the FCPA applied to CITGO, which necessarily involved considerations of Venezuelan law. *See supra* at III(a). DX 1 also attests to CITGO and PDVSA's understanding that no Venezuelan law governed CITGO.

The United States objects to DX 14, the declaration of the defense's expert on Venezuelan law, because it refers to the views of the Venezuelan legal community and summarizes another expert's testimony. Dkt. 83 at 1. But DX 14 describes the Venezuelan legal community's view of CITGO's status *under Venezuelan law*, and it describes the leading Venezuelan public law expert's view of whether CITGO is part of the National Public Administration *under Venezuelan law*. DX 14 then explains why, *under Venezuelan law*, these views are correct in the declarant's legal opinion.

In past instrumentality cases, like *Esquenazi*, the United States has presented a foreign legal expert to testify as to how the foreign country's law treats the entity as a government instrumentality. *See, e.g.*, U.S. Br., *Esquenazi*, 2012 WL 3638390, at *6. According to the United States' Rule 16 disclosure, it has no Venezuelan legal expert here. Given that, the United States understandably wants to limit the defense's presentation of Venezuelan law, which clearly does not treat CITGO as a government-controlled instrumentality. But under Rule 26.1, courts have "broad discretion" to consider a "wide variety of sources" of foreign law. *United States v. Mitchell*,

---

[7] http://www.oas.org/juridico/spanish/ven_res59.pdf. The information provided by Venezuela in DX 38 is confirmed by the United States Department of State in its report on Venezuela, 2012 WL 2024352, at 17–18, which is cited in De Jongh's Trial Memorandum, Dkt. 74 at 33.

1057212.8

985 F.2d 1275, 1280 (9th Cir. 1993) (explaining that a court may consider everything from expert testimony to unsworn affidavits to "information obtained by a law clerk in a telephone conversation with [a foreign] Trade Office"). DX 1, 14, 37, and 38 are all sources that the Court may consider to inform its understanding of Venezuelan law.

Respectfully submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

*/s/ Dane Ball*
Dane C. Ball
(SBN 24051642; Fed. Bar No. 784400)
Shaun G. Clarke
(SBN 24056972; Fed. Bar No. 920661)
Kelley M. Keller
(SBN 11198240; Fed. Bar No. 11539)
Michelle S. Stratton
(SBN 24085606; Fed. Bar No. 2592215)
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300
(713) 221-2320 (fax)
dball@skv.com
sclarke@skv.com
kkeller@skv.com
mstratton@skv.com

*Counsel for Defendant*
*Jose Luis De Jongh-Atencio*


**CERTIFICATE OF SERVICE**

On March 19, 2021, Defendant Jose De Jongh electronically filed this Response and provided an electronic copy to counsel for the United States.

*/s/ Dane Ball*
Dane Ball
*Counsel for Defendant*
*Jose Luis De Jongh-Atencio*

14