## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:20-cr-305-S-1** |
| | § | |
| **JOSE LUIS DE JONGH-ATENCIO,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and John P. Pearson and Robert S. Johnson, Assistant United States Attorneys, and Daniel S. Kahn, Acting Chief of the Fraud Section of the Criminal Division of the United States Department of Justice ("Fraud Section"), and Sarah E. Edwards, Trial Attorney, and Sonali D. Patel, Assistant Chief, and the Defendant, Jose Luis De Jongh Atencio ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.    Defendant agrees to plead guilty to Count One of the Superseding Indictment.  Count One charges Defendant with conspiracy to launder money, in violation of Title 18 United States Code § 1956(h).  Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential

to the punishment either charged in the Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.    The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 1956(h), is imprisonment of not more than twenty years and a fine of not more than $500,000 or twice the value of the laundered funds, whichever is greater.   Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years.   *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00)

2

per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.   Defendant recognizes that pleading guilty may have consequences with respect to his immigration status.   Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Cooperation

5.   The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines.   Defendant understands and agrees that whether such a motion is filed will be determined solely

by the United States through the United States Attorney for the Southern District of

Texas and the Fraud Section.   Should Defendant's cooperation, in the sole judgment

and discretion of the United States, amount to "substantial assistance," the United

States reserves the sole right to file a motion for departure pursuant to Section 5K1.1

of the United States Sentencing Guidelines.   Defendant further agrees to persist in

that plea through sentencing, fully cooperate with the United States, and not oppose

the forfeiture of assets contemplated in paragraph 23 of this agreement.   Defendant

understands and agrees that the United States will request that sentencing be deferred

until that cooperation is complete.

6.   Defendant understands and agrees that "fully cooperate," as that term is

used herein, includes providing all information relating to any criminal activity

known to Defendant, including but not limited to violations of the Foreign Corrupt

Practices Act, the Travel Act, wire fraud, money laundering, aggravated identity

theft, tax fraud, and any related crimes.   Defendant understands that such

information includes both state and federal offenses arising therefrom.   In that

regard:

(a)     Defendant agrees that this plea agreement binds only the United
States Attorney for the Southern District of Texas, the Fraud Section
(collectively, the "Offices"), and Defendant; it does not bind any other
United States Attorney or any other unit of the Department of Justice;

4

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.   Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

7.   Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed.   Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or

5

"collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255.   Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statutes to which the Defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

9.   In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction

6

and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court.   The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *See United States v. Booker*, 543 U.S. 220 (2005).   Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.   Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11.   The United States agrees

(a)      If Defendant pleads guilty to Count One of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing;

(b)      At the time of sentencing the United States will join Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines.

7

The United States does not recommend that Defendant receive a third level for adjustment for timely notifying authorities of his intentions to enter a plea of guilty as contemplated under Section 3E1.1(b).

## Agreement Binding - Southern District of Texas and Fraud Section Only

12.   The United States Attorney's Office for the Southern District of Texas and the Fraud Section agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the Superseding Indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Fraud Section, and Defendant.   It does not bind any other United States Attorney's Office or any other component of the Department of Justice.   The United States Attorney's Office for the Southern District of Texas and the Fraud Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)   to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to sentencing;

8

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14.    Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.    Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively,

Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Superseding Indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a

reasonable doubt.    The following facts, among others would be offered to establish Defendant's guilt:

Defendant, a Venezuelan citizen and, since May 2015, a United States citizen, worked for Citgo Petroleum Corporation ("Citgo").    Citgo, a Delaware corporation with its principal place of business in Houston, Texas, acts primarily as a refiner, transporter, and marketer of petroleum-based products.    Citgo is a wholly-owned subsidiary of Petróleos de Venezuela S.A. ("PDVSA"), Venezuela's state-owned and state-controlled oil company.    Citgo and PDVSA were both "instrumentalities" of the Venezuelan government, and Citgo and PDVSA officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

Defendant was employed by Citgo in Houston, Texas, from in or around September 2010 to February 2018.    Between approximately 2012 and 2015, Defendant worked in a procurement function at Citgo, including for part of that time as a manager in Citgo's Special Projects group, which was also referred to as Shareholder Procurement.

Citgo's Special Projects group procured products and services for PDVSA, which PDVSA paid for with crude oil rather than cash.    Special Projects procured items needed by PDVSA for its operations in Venezuela, as well as other items for

11

the Venezuelan government—including astroturf for a soccer stadium, water desalinization plants for coastal communities in Venezuela, and toys and school supplies for Venezuelan children. Between 2012 and 2018, Citgo's Special Projects purchased more than a billion dollars worth of goods for PDVSA and the Venezuelan government.

During his employment at Citgo, and without Citgo's consent, Defendant accepted bribe payments from Jose Manuel Gonzalez Testino ("Gonzalez"), a dual U.S.-Venezuelan citizen, and Tulio Anibal Farias Perez ("Farias"), a Venezuelan citizen. Gonzalez controlled a number of closely-held companies, including several U.S. companies; Farias was Gonzalez's business partner in some of these companies. Defendant accepted payments from Gonzalez and Farias in exchange for Defendant's assistance to Gonzalez, Farias, and their U.S.-based businesses, in obtaining and retaining business with Citgo, including Citgo's Special Projects group. Defendant's assistance included providing inside information to Gonzalez and Farias to give them an advantage in submitting bids for Citgo contracts, assisting in identifying an appropriate manufacturer that Gonzalez and Farias could represent in bidding for contracts, and taking steps to ensure that one of Gonzalez's companies was selected by Citgo for a contract to provide Citgo with logistics services to obtain goods and ship them to Venezuela.

12

The Defendant agreed with, directed, and caused Gonzalez, Farias, and others to send multiple bribe payments, and the proceeds of the corrupt bribery scheme, to accounts in the names of his relatives and associates, and to offshore accounts held in the names of corporate entities, for the purpose of promoting the illegal bribery scheme and to conceal the nature, location, source, ownership, and control of the proceeds of the illegal bribery scheme.   At Defendant's direction, Gonzalez and Farias paid at least $675,000 to the account identified as "Panama Account 1," and $2,737,679.96 to the account identified as the "Swiss Account," as set forth in paragraphs 34 and 41 of the Superseding Indictment.   Both Panama Account 1 and the Swiss Account were controlled by Defendant.   In addition, Gonzalez participated in a real estate investment at Defendant's request and to Defendant's benefit, paying approximately $1.38 million of the $1.5 million of the purchase price for six units of commercial property located at 440 Cobia Drive in Katy, Texas.

After the illicit bribery proceeds were received in Panama Account 1 and the Swiss Account, Defendant caused these proceeds to be sent from bank accounts held in the name of one company to another, and then from these overseas bank accounts to accounts in the United States in the names of his relatives and associates.   For example, Defendant caused proceeds to be transferred from Panama Account 1 to the account identified in the Superseding Indictment as Panama Account 2, and then

caused the funds to be transferred twice more to the accounts identified in the Superseding Indictment as Texas Account 4 and Texas Account 1, before using the funds to purchase residential property in the Southern District of Texas. Some of the funds Defendant laundered through the Swiss, Panamanian, and other accounts are reflected in paragraph 91 of the Superseding Indictment. Laundered funds were used to purchase additional real property that is listed in paragraph 91 of the Superseding Indictment, and that real property is also property involved in money laundering.

On multiple occasions, the Defendant caused wire transfers and sent emails, each a facility in interstate or foreign commerce, with the intent to distribute the proceeds of the bribe payments from Gonzalez, Farias, and others, and thereafter performed additional acts to further distribute the proceeds of those payments, including the acts described in paragraph 88 of the Superseding Indictment. Additionally, Defendant and others communicated about the scheme, including through email and other means, and engaged in other corrupt acts while located in the United States.

In addition to monetary payments, Defendant also accepted bribes in the form of gifts and other things of value from Gonzalez and Farias, including attending a World Series game in San Francisco, California, in October 2014, attending the

Super Bowl in Glendale, Arizona in February, 2015, and receiving tickets to a U2 concert in June 2017.

In addition to the bribe payments from Gonzalez and Farias, Defendant also accepted corrupt payments from other businessmen in exchange for Defendant's assistance to those businessmen in obtaining and retaining business with Citgo.

The parties also incorporate by reference the stipulations that were signed and filed with the Court at Docket Numbers 59, 60, and 61.

### Breach or Withdrawal of Plea Agreement

17.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.

18.   In the event that the United States determines, in its sole discretion, that the Defendant has failed to fully comply with the terms of this Plea Agreement or the Defendant withdraws (or attempts to withdraw) from this Agreement:

(a)   the Defendant hereby waives any protection afforded by any proffer letter agreement between the parties;

(b)   the Defendant will not assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Factual Proffer entered in connection with this Plea Agreement should be suppressed or is otherwise inadmissible as evidence (in any form);

(c)   any statements made by the Defendant as part of the plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against him without any limitation in any civil or criminal proceeding brought by the Offices;

(d)   the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the Defendant or the Defendant's representatives to any state or federal agency and/or the Offices; and

(e)   the Defendant has adopted the entire factual basis as the Defendant's statements, and the Defendant has stipulated to the admissibility of the Factual Proffer in any case brought by the United States as substantive evidence offered by the government in its case-in-chief and rebuttal case; impeachment evidence offered by the government on cross-examination; and evidence at any sentencing

hearing or other hearing.

### Restitution, Forfeiture, and Fines – Generally

19.   This plea agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest, whether that asset is held in his name or not. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

20.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 30 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

21.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution

17

and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

22.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

23.   Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of all property involved in (or traceable to property involved in) the money laundering conspiracy to which he is pleading guilty, specifically including all of the property listed in paragraph 91 of the Superseding Indictment. The Defendant consents to and will cooperate with the interlocutory sale of any of the real property, at the United State' sole election.   The United States seeks a money judgment, but the parties have not agreed on an amount.   Prior to sentencing, Defendant and the United States will attempt to agree upon the appropriate amount of a money judgment.   If they cannot agree, then the Court will be asked to determine the money judgment amount at or before the time of sentencing.

Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists.

24.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

25.   Defendant consents to any order of forfeiture becoming final as to Defendant immediately following its entry, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A), even if it is signed before sentencing.

26.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

27.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

19

**Complete Agreement**

28.   This written plea agreement, consisting of 23 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _March 22_, 2021.

_____
Jose Luis De Jongh Atencio
Defendant

Subscribed and sworn to before me on _March 22, 2021_, 2021.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

20

By:     _____

Deputy United States District Clerk

APPROVED:

       Jennifer B. Lowery
       Acting United States Attorney

By:     _____               _____

       Robert S. Johnson                                  Dane Ball and Shaun Clarke
       Assistant United States Attorney               Attorneys for Defendant
       Southern District of Texas
       Telephone: (713) 567-9342

       Daniel S. Kahn
       Acting Chief, Fraud Section

By:     _____

       Sarah E. Edwards
       Trial Attorney
       Sonali D. Patel
       Assistant Chief
       Telephone: (202) 305-6761

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:20-cr-305-S-1** |
| | § | |
| **JOSE LUIS DE JONGH-ATENCIO,** | § | |
| **Defendant.** | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Dane Ball and Shaun Clarke
Attorneys for Defendant

3/22/21
Date

22

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____                    03/22/2021.
Jose Luis De Jongh Atencio                          _____
Defendant                                           Date

23